ABRAHAM, FRUCHTER
   & TWERSKY, LLP
TAKEO A. KELLAR (Bar No. 234470)
11622 El Camino Real, Suite 100
San Diego, CA 92130
Tel. (858) 764-2580
Fax (858) 764-2582
*tkellar@aftlaw.com*

Counsel for Plaintiff and the Putative Class
*[Additional Counsel Appear on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HERBERT SILVERBERG, on Behalf of Himself and All Others Similarly Situated,<br><br>                 Plaintiff,<br><br>vs.<br><br>PIVOTAL SOFTWARE, INC., PAUL MARITZ, MICHAEL S. DELL, EGON DURBAN, WILLIAM D. GREEN, MARCY S. KLEVORN, MADELYN LANKTON, ROBERT MEE, and ZANE ROWE,<br><br>                 Defendants. | Case No.: 3:19-cv-06977<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Herbert Silverberg ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Pivotal Software, Inc. ("Pivotal" or the "Company") and other related parties and non-parties with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Pivotal and other related non-parties; (c) review of news articles, shareholder communications, and postings on Pivotal's website concerning the Company's public statements; and (d) review of other publicly available information concerning Pivotal and Defendants.

## NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the Class A common stock ("Stock") of Pivotal against the Company and the members of the Company's board of directors (the "Board"), arising out of the failure to disclose material facts relating to the proposed sale of Pivotal in violation of Sections 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, promulgated thereunder.

2. On August 22, 2019, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with VMware, Inc. ("VMware"), and Raven Transaction Sub, Inc., a wholly owned subsidiary of VMware ("merger sub"), providing for the acquisition of Pivotal by VMware. The transaction referred to in the Merger Agreement (*i.e.* that the merger sub will be merged with and into Pivotal, with Pivotal surviving the merger as a wholly owned subsidiary of VMware) is referred to herein as the "Merger" or the "Proposed Transaction."

3. The Merger Agreement provides that Pivotal shareholders will receive $15.00 in cash (the "Merger Consideration") for each share of Stock that they own immediately prior to the time the merger becomes effective.

4. The Proposed Transaction is subject to certain closing conditions, including a majority of the outstanding shares of Stock not owned by VMware or any of its affiliates, including Dell Technologies Inc. ("Dell") and EMC Equity Assets LLC ("EMC LLC") (*i.e.,* a majority of the minority), approving the terms of the Merger.

5. On October 10, 2019, in order to convince Pivotal's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a proxy statement (the "Proxy Statement"), with the SEC, on Schedule 14A which fails to disclose material information necessary for Pivotal's stockholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the Proxy Statement incomplete and misleading.

6. Plaintiff seeks to enjoin Defendants from holding the stockholder vote with respect to the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Pivotal's stockholders

sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, as Plaintiff alleges violations of Section 14(a) of the Exchange Act.

8. In connection with the acts, omissions, conduct and wrongs alleged herein, Defendant used the mails and the means or instrumentalities of interstate commerce.

9. Venue is proper in this Court pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391. Many of the acts and transactions giving rise to the violations of law complained of herein occurred in this District and this is the District in which the Company maintains its principal place of business. In connection with the acts, conduct and other wrongs complained of herein, Defendants used the means and instrumentalities of interstate commerce. Moreover, Pivotal is headquartered in this District.

**PARTIES**

10. Plaintiff holds, and at all relevant times has held, Pivotal Stock.

11. Defendant Pivotal Software, Inc. is a Delaware corporation with its principal executive offices located at 875 Howard Street, Fifth Floor, San Francisco, California 94103. Pivotal Stock is traded on the NYSE under the symbol "PVTL."

12. Defendant Paul Maritz ("Maritz") was Chairman of the Board at all times relevant hereto. Maritz served as Pivotal's Chief Executive Officer ("CEO") from April 2013 through August 2015. Maritz has also served as a director of VMware and has been employed by Dell.

13. Defendant Michael S. Dell ("Mr. Dell") is, and at relevant times has been, a director of the Company. Mr. Dell is also the founder and chairman of the board of directors of Dell.

14. Defendant Egon Durban ("Durban") is, and at relevant times has been, a director of the Company. Durban is also a member of the board of directors of Dell and VMware and is managing partner and managing director of Silver Lake, a private equity firm.

15. Defendant William D. Green ("Green") is, and at relevant times has been, a director of the Company. Green is also as a director of Dell.

16. Defendant Marcy S. Klevorn ("Klevorn") is, and at relevant times has been, a director of the Company.

17. Defendant Madelyn Lankton ("Lankton") is, and at relevant times has been, a director of the Company.

18. Defendant Robert Mee ("Mee") is, and at relevant times has been, a director of the Company and its Chief Executive Officer ("CEO").

19. Defendant Zane Rowe ("Rowe") is, and at relevant times has been a director of the Company.

20. Defendants Maritz, Mr. Dell, Durban, Green, Klevorn, Lankton, Mee, and Rowe are collectively referred to herein as the "Individual Defendants" and together with Pivotal as the "Defendants."

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the other holders of Pivotal Stock (the "Class"). Excluded from the Class are Defendants herein and any person or other entity related to or affiliated with any Defendant.

22. This action is properly maintainable as a class action because:

   a. The Class is so numerous that joinder of all members is impracticable. As of April 22, 2019, 96,092,042 shares of Pivotal Stock were outstanding, and the holders of those shares are entitled to vote on the Proposed Transaction. Those 96,092,042 shares are beneficially held by hundreds to thousands of individuals and entities scattered throughout the country and around the world. The actual number of public stockholders of Pivotal will be ascertained through discovery;

   b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

      i. whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy Statement in violation of Section 14(a) of the Exchange Act ("Section 14(a)");

      ii. whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote regarding the Proposed Transaction based on the materially incomplete and misleading Proxy Statement.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**A.** **Pivotal's Background**

23. Pivotal, which was founded in 2013, provides a cloud-native application platform and services in the United States. Its cloud-native platform, Pivotal Cloud Foundry ("PCF"), accelerates and streamlines software development. The Company also enables its customers to accelerate their adoption of a modern software development process and their business success

using its platform through its Pivotal Labs ("Labs") services. Pivotal markets and sells PCF and Labs through its sales force and third parties.

24. Pivotal was formed by EMC Corporation, now a subsidiary of Dell, and VMware.

25. On April 20, 2018, Pivotal priced its initial public offering at $15.00 per share.

**B.**  **The Proposed Transaction**

    **1.**  **Background of the Transaction**

26. On January 18, 2019, Defendant Mee had a telephone conversation with Messrs. Dell and Maritz, at the request of Mr. Dell, to discuss various commercial matters involving Pivotal, Dell and VMware. Mr. Dell informed Mee that VMware might be interested in exploring an acquisition of Pivotal. On that day, Pivotal Stock closed at $17.14.

27. On January 22, 2019, Mee met with Patrick Gelsinger ("Gelsinger"), the CEO of VMware, who expressed interest in beginning to explore a potential acquisition of Pivotal and indicated that VMware would seek to conduct preliminary due diligence and assess the strategic rationale for such an acquisition.

28. On March 15, 2019, the Board met to discuss, among other things, a potential transaction between Pivotal and VMware. The Board formed a special committee (the "Special Committee"), consisting of Defendants Lankton and Klevorn, to evaluate any potential strategic transactions. The Special Committee engaged Latham & Watkins LLP ("Latham & Watkins") and Morgan Stanley & Co. LLC ("Morgan Stanley") as its legal and financial advisors.

29. The Special Committee negotiated with VMware but did not seek other bids. Its requests for a "go-shop" provision so that Pivotal could solicit interest from other potential acquirers following entry into a definitive agreement with VMware were rejected.

30. On August 4, 2019, VMware relayed a verbal offer of $13.75 in cash per share for Pivotal Stock.

31. On August 6, 2019, the Special Committee made a counteroffer of $16.50 in cash per share of Stock and requested a "go-shop" provision in the potential merger agreement.

32. Also on August 6, 2019, VMware raised its offer to $14.25 per share of Stock and rejected the inclusion of a go-shop provision in any merger agreement.

33. In response, the Special Committee and Pivotal representatives discussed a further counteroffer of $15.75 per share of Stock, and also discussed the relative value of the Class A common stock to the Class B common stock.

34. On August 7, 2019, Pivotal made a counteroffer of $15.75 per share of Stock and again requested inclusion of a "go-shop" provision in the potential merger agreement.

35. On August 14, 2019, VMware made a "best and final" offer of $15.00 per share for Pivotal Stock, subject to other conditions.

### 2. Disclosure of the Proposed Transaction

36. On August 14, 2019, Dell publicly filed an amendment to its Schedule 13D with respect to VMware, disclosing that the Special Committee and a special committee of VMware's board of directors were proceeding to negotiate definitive agreements with respect to a transaction for VMware to acquire all of the outstanding shares of Pivotal Stock for cash at a per share price equal to $15.00.

37. Following the closing of NYSE normal trading hours on August 22, 2019, the parties executed the Merger Agreement, a support agreement with Dell, EMC LLC, and other parties (the "Support Agreement") and a voting agreement with Ford Motor Company (the "Voting Agreement").

38. After the Merger Agreement, Support Agreement, and Voting Agreement were executed, Pivotal and VMware publicly announced the transaction via a press release. The press release stated, in pertinent part:

> **VMware Signs Definitive Agreement to Acquire Pivotal Software**
>
> *Accelerates Any Cloud, Any App, Any Device Strategy*
>
> *Positions VMware to deliver the most comprehensive enterprise-grade Kubernetes-based portfolio for Modern Applications*
>
> *$11.71 Blended Price Per Share; $15 Cash Per Share for Public Stockholders*
>
> *Enterprise Value of $2.7 billion*
>
> PALO ALTO, Calif., Aug. 22, 2019 (GLOBE NEWSWIRE) --

VMware, Inc. (NYSE: VMW), a leading innovator in enterprise software, and Pivotal Software, Inc. (NYSE: PVTL), a leading cloud-native platform provider, today announced that the companies have entered into a definitive agreement under which VMware will acquire Pivotal for a blended price per share of $11.71, comprised of $15 per share in cash to Class A stockholders, and the exchange of shares of VMware's Class B common stock for shares of Pivotal Class B common stock held by Dell Technologies, at an exchange ratio of 0.0550 shares of VMware Class B stock for each share of Pivotal Class B stock. In total, the merger consideration represents an enterprise value for Pivotal of $2.7 billion. The Board of Directors of each of VMware and Pivotal have approved this transaction, following the recommendations of special committees composed of independent directors of each company. Following the close of the transaction, VMware will be positioned to deliver the most comprehensive enterprise-grade Kubernetes-based portfolio for modern applications.

Pivotal is a technology leader that is transforming the way the world's largest companies build and run software applications. For the last six years, Pivotal has been at the leading-edge of modern software development, helping organizations transform how they build and run their most important applications. Pivotal offers a powerful set of assets including a leading developer-centric platform, tools and services that accelerate modern app development. Additionally, Pivotal is a major contributor to the Spring developer framework, which sees more than 75 million downloads per month. The company is fully embracing Kubernetes with the recent launch of Pivotal Spring Runtime for Kubernetes and the upcoming Pivotal Application Service for Kubernetes.

VMware and Pivotal share a long history of collaboration and joint innovation, reflected in the co-development and launch of VMware Pivotal Container Service (PKS) in February of 2018. VMware has increased its Kubernetes-related investments over the past year with the acquisition of Heptio, and the Kubernetes founders, to become one of the top three contributors to Kubernetes. The combination of Pivotal's developer experience and assets with VMware's IT expertise and infrastructure will help deliver a comprehensive portfolio of products, tools and services necessary to build, run and manage modern applications on Kubernetes infrastructure with velocity and efficiency.

"Kubernetes is emerging as the de facto standard for multi-cloud modern apps. We are excited to combine Pivotal's development platform, tools and services with VMware's infrastructure capabilities to deliver a comprehensive Kubernetes portfolio to build, run and manage modern applications," said Pat Gelsinger,

CEO of VMware. "Importantly, adding Pivotal to our platform, accelerates our broader Any Cloud, Any App, Any Device vision and reinforces our leadership position in modern multi-cloud IT infrastructure."

"The time is ideal to join forces with VMware, an industry leader who shares our commitment to open source community contributions and our focus on adding developer value on top of Kubernetes," said Rob Mee, CEO, Pivotal. "VMware has a proven track record of helping organizations run and manage consistent infrastructure in support of mission critical applications, and our two companies have already built a strong foundation on our successful VMware PKS collaboration. We look forward to continuing our work with VMware to provide even more value to customers building modern applications."

"The VMware Board of Directors is committed to creating value for all stockholders," said Karen Dykstra, Chairperson of the Special Committee of VMware's Board of Directors. "After a thorough and independent evaluation with its advisors, and working closely with the VMware management team, the Special Committee recommended the Board approve this transaction with Pivotal given its strong strategic and long-term value to the company and its customers."

**Details Regarding the Transaction**

Under the terms of the transaction, Pivotal's Class A common stockholders will receive $15.00 per share cash for each share held, and Pivotal's Class B common stockholder, Dell Technologies, will receive approximately 7.2 million shares of VMware Class B common stock, at an exchange ratio of 0.0550 shares of VMware Class B common stock for each share of Pivotal Class B common stock. This transaction, in aggregate, results in an expected net cash payout for VMware of $0.8 billion. The impact of equity issued to Dell Technologies would increase its ownership stake in VMware by approximately 0.34 percentage points to 81.09% based on the shares currently outstanding. VMware currently holds 15 percent of fully-diluted outstanding shares of Pivotal. The transaction is expected to be funded through cash on the balance sheet, accessing short-term borrowing capacity, and approximately 7.2 million shares of VMware Class B common stock to Dell. Closing of the transaction is subject to customary closing conditions including the approval of the merger agreement by the holders of at least a majority of the outstanding shares of Pivotal common stock not owned by VMware or Dell Technologies or their affiliates (a "majority-of-the-minority" vote) and is expected in the second half of VMware's fiscal year 2020, which ends January 31, 2020.

**Advisors**

J.P. Morgan Securities LLC served as financial advisor and Wilson Sonsini Goodrich & Rosati served as legal counsel to VMware. Lazard served as financial advisor and Gibson, Dunn & Crutcher LLP served as legal counsel to the Special Committee of the VMware Board of Directors. Davis Polk & Wardwell LLP served as legal counsel to Pivotal. Morgan Stanley & Co. LLC served as financial advisor and Latham & Watkins, LLP served as legal counsel to the Special Committee of the Pivotal Board of Directors.

**Investor's Conference Call**

The company will host a previously-announced conference call today at 1:30 p.m. PT/ 4:30 p.m. ET to review financial results, discuss the proposed transaction, and business outlook. A live web broadcast of the event will be available on the VMware investor relations website at http://ir.vmware.com. Slides will accompany the web broadcast. The replay of the webcast and slides will be available on the website for two months. In addition, six quarters of historical data for unearned revenue will also be made available at http://ir.vmware.com in conjunction with the conference call.

Pivotal will report financial results for the second quarter fiscal year 2020, which ended on August 2, 2019, on Wednesday, September 4, 2019 following the close of market. Given today's announcement, Pivotal will not be hosting a conference call to discuss the financial results.

### 3. The Proposed Transaction's Preclusive Deal Provisions

39. In addition to failing to conduct a fair and reasonable sales process, the Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for Pivotal.

40. Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict non-solicitation provision that prevents the Company from soliciting other potential acquirers; (ii) an information rights provision that requires the Company to disclose the identity of any competing bidder and to furnish VMware with any competing bid within three business days of receipt; (iii) a matching rights provision which gives VMware three business days to match any unsolicited superior acquisition proposal the Board receives; and (iv) a provision that requires the Company to pay VMware a termination fee of $95 million if the Company, among other things, signs an alternative acquisition agreement.

41. These deal protection provisions, particularly considered collectively in light of the circumstances, substantially and improperly limited Pivotal's ability to investigate or pursue superior proposals and alternatives, including a sale of all or part of Pivotal.

42. Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that Pivotal's shareholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Transaction.

**4. Interests of the Officers and Directors of Pivotal in the Proposed Transaction**

43. As acknowledged by the Proxy Statement:

> some of Pivotal's directors and executive officers have interests in the merger that are different from, or in addition to, your interests as a stockholder and that may present actual or potential conflicts of interest. These interests include, among others:
>
> - for non-employee directors only, accelerated vesting of stock options with an exercise price of less than $15.00 per share and restricted stock units, in each case, in connection with the consummation of the merger;
>
> - grants of equity awards to certain of Pivotal's executive officers and other key employees who will remain employed with Pivotal or any of its subsidiaries (or VMware or any of its affiliates) after the completion of the merger;
>
> - with respect to certain executive officers and other key employees, the opportunity to receive cash severance payments and benefits and equity acceleration of outstanding unvested equity awards in connection with a qualifying termination of employment pursuant to change in control severance agreements; and
>
> - continued indemnification and directors' and officers' liability insurance applicable to the period prior to completion of the merger.

44. In addition, VMware has engaged in discussions regarding the potential terms of new employment agreements with Maritz and other, undisclosed, Pivotal executive officers.

**C. MISLEADING STATEMENTS AND MATERIAL OMISSIONS IN THE PROXY STATEMENT**

45. Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain

CLASS ACTION COMPLAINT                                                                 -11-

any materially false and misleading statements or material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) of the Exchange Act.

### 1. Material Omissions Relating to Financial Projections

46. Pages 81-82 of the Proxy Statement include certain financial projections for Pivotal (the "Projections") including earnings before interest and taxes ("EBIT"), EBITDA and unlevered free cash flow, which are not generally accepted accounting principles ("GAAP") measures. The Proxy Statement further recognizes that "Pivotal's or Morgan Stanley's calculations of these financial measures may differ from others in its industry and are not necessarily comparable with information presented under similar captions used by other companies." A reconciliation of the financial measures included in the Projection is not provided.

47. The Proxy Statement fails to disclose the line items used to calculate EBITDA in each of the non-GAAP financial metrics presented in the Projections, which renders the Proxy Statement materially misleading, especially considering that the it is unclear to what extent the Projections are comparable to the Dell Prepared Pivotal Standalone Case presented on page 85 of the Proxy Statement.

48. Because Defendants have disclosed some of the financial information relied upon by Pivotal's financial advisor, they may not omit line items that are critical to fully understanding that information without rendering the Proxy Statement materially misleading.

### 2. Material Omissions Relating to Morgan Stanley's Analyses and Fairness Opinion

49. The Proxy Statement explains that Morgan Stanley presented the Special Committee with several financial analyses in connection with rendering its opinion as to the fairness, from a financial point of view, of the Proposed Transaction. However, the descriptions of Morgan Stanley's fairness opinion and analyses set forth in the Proxy Statement omit key underlying inputs and assumptions, preventing Pivotal's stockholders from sufficiently understanding these analyses and determining what weight, if any, to place on the analyses in

casting votes in favor of, or against, the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Pivotal's stockholders.

50. Morgan Stanley's *Public Trading Comparables Analysis*, presented on pages 45-46 of the Proxy Statement, fails to disclose the individual multiples and financial metrics for the companies observed. A fair summary of such an analysis requires the disclosure of the individual multiples for each company utilized or, at a minimum, the high, low, mean and median multiples. Merely providing the range that a banker applied is insufficient, as stockholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied valuation of a company.

51. Morgan Stanley's *Discounted Equity Value Analysis*, presented on page 47 of the Proxy Statement, fails to disclose Morgan Stanley's estimates of Pivotal's "estimated future net debt at the end of fiscal year 2022, fiscal year 2023 and fiscal year 2024" that were used to calculate Pivotal's implied future equity value and "the fully diluted capitalization of Pivotal as of August 2, 2019 provided to Morgan Stanley by Pivotal's management."

52. Morgan Stanley's *Discounted Cash Flow Analysis*, presented on pages 47-48 of the Proxy Statement, omits Morgan Stanley's range of terminal values in the year 2028, its basis for using assumed perpetuity growth rates ranging from 2.5% to 3.5%, and Pivotal's net debt and fully diluted capitalization as of August 2, 2019.

53. With respect to Analyst Price Targets, Morgan Stanley presented price targets of certain public equity research analysts, which provided a "range of analyst price targets per share for the Class A common stock discounted for one year at a rate of 10.0%, such discount rate selected by Morgan Stanley upon the application of its professional judgment to reflect its estimate of Pivotal's cost of equity, was $13.19 to $17.28 per share as of the Last Unaffected Trading Date, based on the fully diluted capitalization of Pivotal as of August 2, 2019 provided to Morgan Stanley by Pivotal management." The Proxy Statement fails to disclose which public equity research analysts were reviewed, each of their specific price targets, the average of the price targets, and why Morgan Stanley selected a discount rate of 10% for presenting these targets.

54. When an investment bank's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

### 3. Material Omissions Relating to the Background of the Proposed Transaction

55. The Proxy Statement represents (on page 30) that on August 6, 2019, the Special Committee discussed, *inter alia*, the relative value of Pivotal Stock and its super voting Class B common stock held by Dell and VMware, which shares are convertible into Stock on a one-for-one basis. No information about the relative value of Pivotal's share classes is provided such that the Class can evaluate whether holders of Pivotal's super voting Class B common stock are being treated preferentially.

56. The Proxy Statement represents (on page 23) that after February 1, 2019, when VMware formed a special committee of its board of directors to evaluate a proposed transaction with Pivotal, Defendant Rowe, the Chief Financial Officer of VMware and a member of the Board, informed Pivotal that he would be recusing himself from further meetings of the Board and did not attend any further meetings of the Board. However, the Proxy Statement also discloses that the VMware management team attended portions of a number of VMware special committee meetings. It is not disclosed to what extent Rowe participated in such meetings while he was owed a fiduciary duty to VMware, Pivotal, and the Class.

### COUNT I

**AGAINST ALL DEFENDANTS
FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT
AND RULE 14-9 PROMULGATED THEREUNDER**

57. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

CLASS ACTION COMPLAINT                                                              -14-

58. Section 14(a)(1) makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

59. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

60. Defendants have issued the Proxy Statement with the intention of soliciting stockholders' support for the Proposed Transaction. Each Defendant reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company and the fairness opinion of Pivotal's financial advisor.

61. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each Defendant, by virtue of their roles as officers and/or directors, was aware of the omitted information but failed to disclose such information, in violation of Section 14(a). Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

62. Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

63. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

64. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in omitting material information from the Proxy Statement or failing to notice material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, Defendants were intricately involved in the preparation of Pivotal's financial projections and the process leading up to the Merger Agreement's execution.

65. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

66. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the stockholders vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy Statement;

C. Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

CLASS ACTION COMPLAINT                                              -16-

D.   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.   Granting such other and further relief as this Court may deem just and proper.

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

Dated: October 24, 2019        By:   /s/ *Takeo A. Kellar*
                                     TAKEO A. KELLAR
                                     11622 El Camino Real, Suite 100
                                     San Diego, CA 92130
                                     Tel: (858) 764-2580
                                     Fax: (858) 764-2582

                                     -AND-

                                     MICHAEL J. KLEIN
                                     (*mklein@aftlaw.com*)
                                     One Penn Plaza, Suite 2805
                                     New York, NY 10119
                                     Tel: (212) 279-5050
                                     Fax: (212) 279-3655